[L. A. Nos. 23024, 23025.   In Bank.   Dec. 3, 1954.]

ARCHIE B. SHORE, Respondent, v. ALBERTA MAE
SHORE, Appellant.

(Two Cases.)

Siemon & Siemon and Alfred Siemon for Appellant.

Kendall & Howell and William A. Howell for Respondent.

TRAYNOR, J.—Archie B. Shore brought these actions to establish his title to an undivided one-half interest in certain real and personal property in the possession of defendant Alberta Mae Shore and to secure a partition of the personal property. The actions were consolidated for trial. In her answers, Alberta pleaded that Archie's actions were barred by a decree of annulment between the parties and that Archie had given her his one-half interest in the property while they were living together as husband and wife. Title to all of the property had originally been taken by the parties as joint tenants. The trial court found that the annulment decree was not a bar to these actions and that Archie had not made a gift of his interest in the property to Alberta. It further found that Archie had deeded his interest in the real property to defendant to protect his interest from unfounded claims against him by third parties and that Alberta held Archie's interest on an oral trust for him. Since a confidential relationship had existed between the parties and since the claims against Archie were unfounded, it concluded that the oral trust was enforceable and entered

judgment that each party was the owner of an undivided one-half interest in the real property. In the action for partition of the personal property it entered judgment that each of the parties was the owner of an undivided one-half interest and ordered a partition. Alberta has appealed from both judgments.

Relying on the following facts, Alberta contends that the trial court erred in holding that the decree in the annulment action was not a bar to these actions. At the time of the annulment action in 1951, title to the real property stood in her name and she was in possession of both the real and personal property. In her complaint for divorce or annulment she alleged that the property involved in this action was her separate property and prayed that the court so determine. In his answer and cross-complaint for annulment, Archie alleged that the property was the community or jointly acquired property of the parties and prayed that it be divided equally between them. The trial court awarded an annulment to Alberta on the ground that Archie had another spouse living at the time of his purported marriage to Alberta. It also found that the parties were *in pari delicto*, and ''that the Court, therefore, makes no findings concerning the character of the property set out in the first cause of action of [Alberta's] complaint.'' As a conclusion of law it stated ''That the Court, finding both parties at fault in the purported marriage, declines for lack of jurisdiction to make any award of property alleged to be community in character.''

Alberta contends that the foregoing finding and conclusion constitute a binding adjudication that at the time of the annulment neither party was entitled to relief against the other with respect to the property here in question. Archie contends, on the other hand, that a denial of relief for lack of jurisdiction does not constitute a judgment on the merits and that in any event no adjudication with respect to the property was carried into the formal decree of annulment.

█ When the property rights of the parties are properly put in issue by the pleadings in an annulment action, the court may determine them. (*Figoni* v. *Figoni*, 211 Cal. 354, 357 [295 P. 339]; *Schneider* v. *Schneider*, 183 Cal. 335, 342 [191 P. 533, 11 A.L.R. 1386]; see *Sanguinetti* v. *Sanguinetti*, 9 Cal.2d 95, 99 [69 P.2d 845, 111 A.L.R. 342].)

█ If the purported marriage was not entered into in

good faith, however, the court may not properly award the property of the parties as if the marriage had been valid and the property community in character. (*Vallera* v. *Vallera*, 21 Cal.2d 681, 684-685 [134 P.2d 761]; *Baskett* v. *Crook*, 86 Cal.App.2d 355, 362 [195 P.2d 39]; *Taylor* v. *Taylor*, 66 Cal.App.2d 390, 399 [152 P.2d 480].) ▮ When the decision of the court in the annulment action is viewed in the light of these rules, it is clear that it constituted more than a decision on the issue of jurisdiction. It was also a determination on the merits of Archie's claim that the property should be divided equally as the community or jointly acquired property of the parties. The court did not merely decide that it lacked jurisdiction to award the property, it decided that because the parties were *in pari delicto* neither of them was entitled to legal assistance with respect to their property interests. Accordingly, when the decree of annulment is interpreted in the light of the findings of fact and conclusions of law (see *City of Vernon* v. *Superior Court*, 38 Cal.2d 509, 514 [241 P.2d 243]; *Gelfand* v. *O'Haver*, 33 Cal.2d 218, 222 [200 P.2d 790]), it is clear that it was tantamount to a dismissal of the respective claims of the parties with respect to their property interests. The situation is thus closely analogous to that in *Olwell* v. *Hopkins*, 28 Cal.2d 147 [168 P.2d 972], where it was held that a judgment of dismissal was res judicata when it appeared that the dismissal was based upon a determination that the contract sued upon was void. The court recognized that "Ordinarily a judgment of dismissal is not a judgment on the merits and therefore does not operate as a bar to another action on the same cause of action. This court has recognized, however, that a dismissal may follow an actual determination on the merits [citations] as have courts in other jurisdictions. . . . At the hearing upon their motion to dismiss the present action, defendants introduced in evidence the record of the first action. It is clear from that record that the one issue passed upon by the trial court in dismissing the first action was that raised by defendants' contention that plaintiff's cause of action was based upon a contract that was void. The defense thus interposed went to the merits of plaintiffs' cause of action. . . . [Defendants] raised an issue as to plaintiffs' right to recover under any circumstances upon their alleged cause of action and upon that issue the court rendered judgment against plaintiffs." (28 Cal.2d at 149-150.) **[4]** The reasoning in the Olwell

case is equally applicable here, and accordingly we conclude that although a judgment refusing to determine an issue on the ground of lack of jurisdiction is not ordinarily res judicata (*Slaker* v. *McCormick-Saeltzer Co.*, 179 Cal. 387, 389 [177 P. 155] ; see also *Stark* v. *Coker*, 20 Cal.2d 839, 843-844 [129 P.2d 390]), when the decision on the jurisdictional question is based upon a determination of the merits of an issue before the court, it constitutes a binding determination of that issue.

In the present actions Archie is not seeking to establish an interest in the property growing out of the purported marital relationship. He relies on evidence with respect to the acquisition of the property and the parties' dealings therewith that the trial court found to be sufficient to establish his claim to a one-half interest without reference to that relationship. ■ As was pointed out in *Vallera* v. *Vallera, supra,* 21 Cal.2d 681, 685, the fact that a man and woman do not in good faith believe they are married does not preclude the court from protecting their respective interests in jointly acquired property. Accordingly if Archie advanced the theory of recovery he now relies upon in the annulment action, the court erred in holding that the fact the parties were *in pari delicto* prevented relief. ■ Although it does not appear that Archie sought to establish his interest in the property in the annulment action on the theory now advanced, whether he did or not, these actions are barred by that adjudication. He now seeks to establish the same right in the property that he sought to establish in the annulment action, and the decision in that action went to the merits of his claim. If the court in the annulment action erroneously applied the doctrine of *pari delicto* to deny relief on the theory now advanced, Archie's remedy was by appeal. On the other hand, if Archie failed to present the present theory of recovery in the former action, it is too late for him to do so now. The situation is legally indistinguishable from that in *Krier* v. *Krier,* 28 Cal.2d 841 [172 P.2d 681], where a wife sought in successive actions to establish an interest in the same property on different legal theories. "In the prior separate maintenance action Mrs. Krier sought and procured an adjudication with respect to her interest in the property. She here seeks a second adjudication relative to her interest in the same property. ■ It is settled, however, that a judgment in a prior action between the same parties on the identical

cause of action is res judicata, and a bar to a second suit thereon, not only as to issues actually determined therein but also as to issues necessarily involved. [Citations.] ██ And even though the cause of action be different, the prior determination of an issue is conclusive in a subsequent suit between the same parties as to that issue and every matter which might have been urged to sustain or defeat its determination. [Citations.]

"Having claimed the property in the prior action solely as community property and having procured a decree therein based on its character as such, Mrs. Krier is precluded from seeking in this later action another award thereof based on an entirely different interest (homestead or otherwise) existing, but unclaimed, at the time of the earlier adjudication. Under the circumstances she was required to advance her entire interest, whether community or homestead, or both, in order to permit the court to make an effective and complete adjudication of the respective interests of the parties. [Citation.] Not having done so, she cannot relitigate the matter, whether it be held that the two suits involved the same cause of action insofar as they concerned her interest in the property, or merely involved a common issue as to her interest in the property." (28 Cal.2d at 843-844.)

The judgments are reversed.

Gibson, C. J., Edmonds, J., and Spence, J., concurred.

CARTER, J.—I dissent.

I do not agree that the finding of the trial court in the annulment action brought by Alberta to the effect that "the Court, therefore, makes *no* findings concerning the character of the property set out in the first cause of action of [Alberta's] complaint" and the conclusion of law that "the Court, finding both parties at fault in the purported marriage, declines for lack of jurisdiction to make any award of property alleged to be community in character," constituted a binding determination of the property issue so as to constitute a bar to the present actions. It was, in my opinion, a specific declaration that the issue had not been adjudicated.

"There can be no doubt that the dismissal of an action or denial of relief for want of jurisdiction is not a judgment on the merits, and cannot prevent the plaintiff from sub-

sequently prosecuting his action in any Court authorized to entertain and determine it. No question other than the jurisdictional one is concluded by such a judgment, since after the Court has determined its lack of jurisdiction, any further finding or judgment as to the matters alleged is wholly ineffective. . . . Refusal to pass on a particular matter for lack of jurisdiction is not an adjudication of it.'' (Freeman on Judgments, 5th ed., vol. 2, p. 1546, § 733. (In *Slaker* v. *McCormick-Saeltzer Co.*, 179 Cal. 387, 389 [177 P. 155], this court said: ''Looking merely to the judgment in the foreclosure suit, it is very plain that the court did not therein undertake to pass upon the merits of the controversy between Slaker and the McCormick-Saeltzer Company. *What it did was to decline to determine that controversy, for the reason that it was without jurisdiction, in that action, so to do. Whether the holding that it had no jurisdiction was sound or erroneous is not a question for consideration here. The essential point is that there was no adjudication of the merits. . . .*'' (Emphasis added.) It is elemental that a judgment which has not been rendered on the merits is not res judicata (*Campanella* v. *Campanella*, 204 Cal. 515 [269 P. 433]; *Goddard* v. *Security Title Ins. & Guar. Co.*, 14 Cal.2d 47, 52 [92 P.2d 804]; *Gonsalves* v. *Bank of America*, 16 Cal.2d 169, 173 [105 P.2d 118]; *Everts* v. *Blaschko*, 17 Cal.App.2d 188 [61 P.2d 776]; *Matteson* v. *Klump*, 100 Cal. App. 64 [279 P. 669]; *Helvey* v. *Castles*, 73 Cal.App.2d 667 [167 P.2d 492]; *Jacobs* v. *Norwich Union Fire Ins. Soc.*, 4 Cal.App.2d 1 [40 P.2d 899]; *Miller* v. *Ambassador Park Syndicate*, 121 Cal.App. 92 [9 P.2d 267]; *Taylor* v. *Darling*, 22 Cal.App. 101 [133 P. 503]; *Security T. & S. Bank* v. *Southern Pac. Co.*, 214 Cal. 81 [3 P.2d 1015]; *Scheeline* v. *Moshier*, 172 Cal. 565 [158 P. 222]).

What the majority is saying is, in effect, this: When the trial court determined it had no jurisdiction to decide the question of property, it was really a determination on the merits that neither party was entitled to relief and therefore ''tantamount to a dismissal of the respective claims of the parties with respect to their property interests.'' The trial court specifically made no finding as to the character of the property. As in the Slaker case, it declined to determine the controversy for the reason that it felt it was without jurisdiction. ''Whether the holding that it had no jurisdiction was sound or erroneous is not a question for consideration here. The essential point is that there was no adjudication

on the merits. . . ." In order to reach the conclusion reached by the majority, too many "ifs" are involved. First it is said "*if* Archie advanced the theory of recovery" now relied on, the court erred in holding that the doctrine of pari delicto prevented relief. Then that "if" is discarded with the statement that "it does not appear that Archie" did seek to establish his interest on the theory now advanced. Secondly, it is said "*if* the court in the annulment action erroneously applied the doctrine of *pari delicto* to deny relief on the theory now advanced, Archie's remedy was by appeal." Then it is said: "On the other hand, *if* Archie failed to present the present theory of recovery in the former action, it is too late for him to do so now." The rule set forth in *Krier* v. *Krier*, 28 Cal.2d 841 [172 P.2d 681], is not applicable here. When a court specifically declines to pass upon an issue, the rule as to issues involved directly, or necessarily involved by implication, does not apply.

Before the trial court could reach any conclusion with respect to the respective property interests involved, it had first to determine the character of the property. This it did not do. That no determination was in fact made is borne out by the language used in the conclusion of law wherein comment is made concerning the "alleged" community character of the property. As we said in *Stark* v. *Coker*, 20 Cal.2d 839, 840, 843 [129 P.2d 390], "While it is true that as a general rule a judgment is a bar as res judicata not only as to a subsequent action on the same matter actually determined, but also as to all issues that might have been litigated as incident to or essentially connected with the subject matter of the litigation and every matter coming within its legitimate purview (Code Civ. Proc., §§ 1908, 1911; 15 Cal.Jur. 142 et seq.), it is also true that that only is adjudged in a former judgment which appears upon its face to have been adjudged or which was actually and necessarily included therein or necessary thereto. (Code Civ. Proc., § 1911.) *And when it affirmatively appears that an issue was not determined by the judgment, it obviously is not res judicata upon that issue. A judgment is not an adjudication as to matters which the court expressly refrains from determining.* (*Watson* v. *Poore*, 18 Cal.2d 302 [115 P.2d 478]; 15 Cal.Jur. 150.)" (Emphasis added.)

If we were not faced with the specific finding that no determination was made as to the character of the property, the position taken in the majority opinion might be entitled

to more credibility. The rule I have just set forth as stated in the Slaker case is recognized by the majority, but nevertheless, the conclusion is reached that since the decision of the trial court on the jurisdictional question was based upon a determination of the merits "of an issue before the court, it constitutes a binding determination of that issue." It seems to me to be inescapable that before the trial court could make a binding determination of the property issue based on the merits, it must, first, determine whether it had jurisdiction to make such determination, but it expressly held that it had no jurisdiction to determine such issue and refused to determine it.

It is my view that the majority opinion is clearly in conflict with the rule set forth in Freeman on Judgments (*supra*) and *Slaker* v. *McCormick-Saeltzer Co., supra,* as well as *Stark* v. *Coker, supra.* The rule announced in the majority opinion extends the doctrine of res judicata beyond its intended scope in that a majority of this court there concludes, in the face of a clear statement by the trial court to the contrary, that an issue was finally determined so as to constitute a bar to a second action. The logical result of the conclusion reached by the majority is to deprive the plaintiff in such an action of his day in court.

I would affirm the judgments.

Shenk, J., and Schauer, J., concurred.

Respondent's petition for a rehearing was denied December 29, 1954. Shenk, J., Carter, J., and Schauer, J., were of the opinion that the petition should be granted.